FILED

MAY - 2 2008

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| In re | Case No. 06-21891-A-7 |
| THOMAS PISHOS, | Docket Control No. DNL-8 |
| Debtor. | Date: April 28, 2008<br>Time: 9:00 a.m. |

**MEMORANDUM**

The chapter 7 trustee, Susan Smith, seeks approval of a compromise between the bankruptcy estate of debtor Thomas Pishos and GE Commercial Finance.

GE filed a timely proof of claim in the amount of $694,258.[1] When filed, its claim was secured by two unimproved lots in

---

[1]   GE's claim is based on a July 22, 2005 judgment against Thomas Pishos, the debtor in this case, Paul Pishos, and Pishos, Inc., in the original amount of $1,162,614.  On March 6, 2006, before this bankruptcy case was filed, GE received $597,186 by enforcing its judgment against property located in Lathrop, California, and owned by the debtor.  Taking into account the accrual of interest, this payment reduced the judgment to $680,754.  From March 6, 2006, and through the date of the bankruptcy petition, $25,286 in additional interest accrued. Hence, the correct amount due on the petition date, June 2, 2006, was $706,040, rather than the $694,258 demanded in the proof of claim.

Shasta County in which the debtor owned an undivided one-half interest.

Under the terms of the proposed compromise, the estate will assign all of its claims against Patricia Graham, one of the debtor's former spouses, to GE. Those rights include the debtor's indemnity and contribution claim against Ms. Graham. But, these claims likely have no value. For one thing, Ms. Graham filed her own bankruptcy case and the trustee did not file a timely proof of claim in that case. For another, Ms. Graham's case was closed on January 25, 2008, making it exceedingly unlikely that this bankruptcy estate will receive anything on account of its claim.

The trustee filed an adversary proceeding (Adv. Proc. No. 08-2023) to recover real property commonly known as the Highway 88 property, or its value, from Bonnie Pishos, another former spouse of the debtor, as well as from Ghaus Malik, individually and in his capacity as trustee of the G. Malik Trust of 2007.

The complaint alleges that approximately two and one-half months before filing for this bankruptcy case, the debtor deeded the Highway 88 Property to Ms. Pishos. On June 7, 2007, one year and five days after the petition date, June 2, 2006, Ms. Pishos conveyed that property to Mr. Malik. On September 26, 2007, Mr. Malik transferred the Highway 88 Property to himself as trustee of the G. Malik Trust of 2007. The complaint asserts that these transfers are avoidable under a variety of theories.

Even if the trustee is successful in avoiding these transfers and recovering the Highway 88 property, GE holds a judicial lien against the property, created more than 90 days

before the petition date.  That lien is likely superior to any
interest of the bankruptcy estate in the property.  Nevertheless,
as part of the compromise, GE agrees to allow the trustee to
prosecute the adversary proceeding, in exchange for payment of
the estate's administrative costs and a 10% carve-out for
unsecured creditors.

In the same adversary proceeding, the trustee also seeks to
recover promissory notes, referred to by the parties as the
Hunting Lodge notes.  These notes are held by Ms. Pishos.  The
obligor of the notes is Heritage Ranch Holdings.  Approximately
$240,000 remains due and owing under the terms of the notes.  The
trustee maintains that Ms. Pishos must disgorge the approximate
$140,000 previously paid to her by Heritage Ranch Holdings.

Without the compromise, GE would have no interest in this
portion of the litigation or the notes.  As part of the
compromise, however, GE will receive the same proportional
interest in the notes that it will receive in the Highway 88
property.  That is, if the trustee collects the notes and
recovers the amounts previously paid to Ms. Pishos by Heritage
Ranch Holdings, GE will receive 90% of such amounts after payment
of the estate's administrative costs.

In connection with the compromise, GE's proof of claim will
be allowed in the amount of $517,953.  The reduction from the
amount in the proof of claim is attributable in part to GE's
post-petition receipt of $31,075 from the sale of the Shasta
County lots, and $145,230 from Patricia Graham's bankruptcy
case.[2]  The remainder of the reduction represents a discount GE

---

[2]    These two payments total $176,305.

1   is permitting by virtue of the compromise.[3]

2      GE's discounted claim of $517,953 will be paid 90% of any

3   recovery in the adversary proceeding, subject to the prior

4   payment of the trustee's administrative costs incurred in

5   connection with the litigation, including the costs of

6   liquidating recovered assets and resulting tax liabilities. The

7   holders of the other unsecured claims will receive the remaining

8   10% of any recovery.

9      Mr. Malik, individually and in his capacity as trustee of

10   the G. Malik Trust of 2007, opposes the compromise.

11      Preliminarily, Mr. Malik maintained that the trustee's

12   notice of the hearing on the motion to approve the compromise did

13   not comply with Local Bankruptcy Rule 9014-1(d)(4) because it did

14   not provide creditors with sufficient information regarding the

15   compromise. Without sufficient information, they could not make

16   an intelligent decision regarding opposing or supporting the

17   compromise. But, after the court continued the hearing on the

18   motion from March 17 to April 14, the trustee re-noticed the

19   hearing to all parties in compliance with Local Bankruptcy Rule

20   9014-1(d)(4) and Fed. R. Bankr. P. 2002(a)(3). The trustee has

21   corrected any notice deficiency.

22

23      [3]   The trustee's motion overstates the amount of the discount. If the correct claim amount on the day of the petition

24   was $706,040 (see footnote 1), after deducting the two payments totaling $176,305, the remaining amount due GE should be

25   $529,735. As a result of the compromise, this will be reduced to $517,953. The trustee's assertion that the discount is higher is

26   predicated on the assumption that GE is entitled to post-petition interest on its claim. However, because it is under-

27   collateralized, 11 U.S.C. § 506(a) does not permit the accrual of post-petition interest. Nonetheless, the compromise does provide

28   a modest discount on the amount otherwise due to GE.

1    Mr. Malik also complains that he was not served with the

2 motion and was not given sufficient notice and opportunity to

3 oppose the compromise.  Any such defect has been remedied.  Mr.

4 Malik was given ample opportunity to make his views regarding the

5 compromise known to the court and he made use of the opportunity.

6    Mr. Malik was given this opportunity even though his

7 standing to question the compromise is debatable.  Under Fed. R.

8 Bankr. P. 2002(a)(3), only the debtor, the trustee, the creditors

9 and indenture trustees are required to be given notice of the

10 approval of a compromise.  Mr. Malik does not fit within any of

11 the categories of parties in interest.  He is not a creditor and

12 he has not filed a proof of claim.

13    Nevertheless, the court has considered Mr. Malik's

14 objections because, in the event the trustee successfully avoids

15 the transfers of the Highway 88 property and recovers it from Mr.

16 Malik, he might conceivably then have a claim against the estate.

17 See 11 U.S.C. § 548(c); Fed. R. Bankr. P. 3002(c)(3).

18    Mr. Malik first argues that the motion is unsupported by

19 evidence and fails to discuss whether the compromise is in the

20 best interests of the creditors and is fair and equitable.  See

21 Martin v. Kane (In re A & C Props.), 784 F.2d 1377, 1380 (9th

22 Cir. 1986); Woodson v. Fireman's Fund Ins. Co. (In re Woodson),

23 839 F.2d 610, 620 (9th Cir. 1988).

24    The agreement memorializing the compromise is an exhibit to

25 the motion.  The trustee's motion and supporting documents

26 discuss the relative merits of the compromise and the underlying

27 disputes.  She concludes that, in her opinion, approval of the

28 compromise is in the best interest of creditors.

In evaluating the compromise, it is not incumbent on the bankruptcy court to conduct a trial, or even a "mini-trial," in order to refute, point by point, every objection raised by a party unhappy with a compromise.  Any such requirement would remove a significant incentive for settlement - the avoidance of litigation costs.  Port O'Call Inv. Co. v. Blair (In re Blair), 538 F.2d 849, 851-52 (9th Cir. 1976).  Also, the bankruptcy court may give weight to the opinion of the trustee, as well as to those of the other parties to the compromise and creditors.  Id. at 851.

Ultimately, if the bankruptcy court is able to find a reasoned basis in the record supporting a conclusion that the compromise is fair and equitable, it may approve it.

Assuming the compromise is approved and the trustee is completely successful in the adversary proceeding, the general unsecured claims (which total $421,872.40[4] according to the claims register), after payment in full of the State Board of Equalization's priority tax claim ($95,365.19), and excluding GE's general unsecured claim ($517,953), are likely to share approximately $33,243.48, a 7.88% dividend.

If the trustee is completely successful in all litigation, she will recover the $240,000 remaining due on the Hunting Lodge notes, $140,000 from Ms. Pishos (the approximate amount previously paid to her by Heritage Ranch Holdings on the notes),

---

[4]    Actually, the amount of unsecured claims reported on the claims register is $448,813.23.  Bank of the West, however, filed duplicative claims of $26,940.83, on August 24, 2006 and September 15, 2006.  The court has included only one of these claims in the total claim amount.

$258,000 from the Highway 88 property (Mr. Malik's purchase price of $775,000 minus $517,000 in encumbrances), and $40,000 in the Moreland preference litigation.  These amounts, together with the $35,000 already received from the sale of the Shasta County lots, total $713,000.

The $40,000 Moreland preference recovery and the $35,000 are not subject to the compromise.  Hence, GE would not receive 90% of these amounts.  It would receive 90% of the remaining $638,000 (after deducting administrative expenses and costs) of the above-mentioned recoveries.

Assuming that trustee and professional administrative fee expenses total 40% of all amounts collected,[5] assuming the estate owes no taxes,[6] and assuming the State Board of Equalization's priority tax claim is paid first from the $35,000 received from the Shasta County lot sale and the $40,000 to be received in the Moreland preference litigation, and then from the $638,000 in potential recoveries subject to the compromise prior to their division between GE and the estate, $33,243.48 will be available to pay all other unsecured claims.  These calculations are summarized in Table 1 below.

---

[5]   In the court's judgment, this is a reasonable estimate of the trustee's commission and her counsel's compensation.  It takes into account the compensation permitted by 11 U.S.C. § 326(a) and, as to counsel, the 33% contingency fee arrangement approved by the court.

[6]   The record does not permit the court to estimate the estate's tax liabilities.  Obviously, the estate will have some tax liability as a result of the sale and liquidation of estate property.  Whatever taxes are owed, however, will be paid before payment of all creditors, including GE.  Hence, those taxes will reduce the dividends to all unsecured creditors proportionately.

-7-

**Table 1.**

|  | Amounts Not Subject to Division Pursuant to Compromise | Amounts Subject to Division Pursuant to Compromise |
|---|---|---|
| Amounts recovered | $75,000.00 | $638,000.00 |
| Est. Admin. fees @ 40% | − $30,000.00 | − $255,200.00 |
| *Subtotal* | $45,000.00 | $382,800.00 |
| Priority claim $95,365.19 | − $45,000.00 | − $50,365.19 |
| *Subtotal after payment of priority claim* | 0.00 | $332,434.81 |
| 90% due to GE on a claim of $517,953 | 0.00 | − $299,191.33 (a 57.76% dividend to GE) |
| Remainder distributable to other unsecured creditors | 0.00 | $33,243.48 |
| Percentage dividend to holders of other unsecured claims, $421,872.40 | 0% | 7.88% |

On the other hand, if the compromise is not approved, the trustee is unlikely to have any success in recovering anything for the estate from the Highway 88 property.  As noted above, GE holds a judicial lien against that property predating both the bankruptcy and the transfer to Mr. Malik.  Given that judicial lien, the absence of a compromise means that GE and Mr. Malik will fight each other to determine whose interest in the property is superior.

Without the compromise, GE's unsecured claim of $529,735[7] will not be discounted and it will share pro rata with the claims of other unsecured creditors in all amounts recovered by the trustee.  Those amounts, assuming complete success in all

---

[7]    See footnote 3.  GE's uncompromised, unsecured claim of $529,735, when added to the other unsecured claims, brings the total unsecured claims to $978,548.23.

litigation except the claims related to the Highway 88 property, total approximately $455,000 ($240,000 from the obligor of the Hunting Lodge notes, $140,000 from Ms. Pishos for amounts received from the notes' obligor, $35,000 from the sale of the Shasta County lots, and $40,000 from the Moreland preference litigation).

As Table 2 below summarizes, the dividend payable to holders of unsecured claims, including GE, in the event there is no settlement with GE, will be approximately 18.67%.

**Table 2.**

| | |
|---|---:|
| Amounts recovered | $455,000.00 |
| Est. Admin. fees @ 40% | − $182,000.00 |
| *Subtotal* | $273,000.00 |
| Priority claim $95,365.19 | − $95,365.19 |
| *Subtotal after payment of priority claim* | $177,634.81 |
| Total unsecured claims | $951,607.40 |
| Percentage dividend to holders of all unsecured claims | 18.67% |

This dividend might even adjust upward.  If GE prevails against Mr. Malik, it will receive all of approximately $258,000 derived from the Highway 88 property.  This would reduce its total claim against the estate from $529,735 to $271,735.  This would leave total claims against the estate of $693,607.40, rather than $951,607.40, to share $177,634.81, thereby raising the dividend from 18.67% to 25.61%.

Hence, the recovery of the unsecured creditors is not enhanced by the compromise.

///

1    In support of the compromise, the trustee asserts that the

2  $140,000 claim against Ms. Pishos may be difficult to collect.

3  The court agrees that the collectibility of a judgment is a

4  factor worthy of consideration in evaluating the compromise.

5  However, beyond making the assertion, the trustee has produced

6  nothing that convinces the court that Ms. Pishos cannot pay, or

7  cannot be made to pay, $140,000 or any other amount.  The court

8  has no financial records, a credit report, or some other evidence

9  indicating that Ms. Pishos is likely unable to pay a judgment.

10  The court will not accept the trustee's unsubstantiated concern

11  about the collectibility of a judgment as a substitute for

12  evidence.[8]

13    Further, even if it is assumed that Ms. Pishos cannot pay

14  the $140,000, and even if it is also assumed that GE's claim

15  against the Highway 88 property will trump any claim of the

16  estate to that property, it appears unsecured creditors are

17  better off if the trustee forgoes the compromise and pursues only

18  the obligor of the Hunting Lodge notes and the Moreland

19  preference litigation.  These recoveries, together with the

20  $35,000 from the sale of the Shasta County lots, would leave the

21  trustee with $315,000 to distribute.  Table 3 summarizes the

22  likely dividend to holders of unsecured claims.

23  ///

24

---

25    [8]    To the extent the trustee also maintains that the
26  obligor of the Hunting Lodge notes, Heritage Ranch Holdings, is
   unable or unwilling to pay, the court's conclusion is the same –
27  there is nothing in the record supporting the assertion.  If
   anything, its payment of approximately $140,000 to Ms. Pishos,
28  both before and during this case, seems to make clear that it
   does have the ability to pay.

-10-

**Table 3.**

| Amounts recovered | $315,000.00 |
|---|---|
| Est. Admin. fees @ 40% | − $126,000.00 |
| *Subtotal* | $189,000.00 |
| Priority claim $95,365.19 | − $95,365.19 |
| *Subtotal after payment of priority claim* | $93,634.81 |
| Total unsecured claims | $951,607.40 |
| Percentage dividend to holders of all unsecured claims | 9.84% |

This dividend exceeds the dividend unsecured creditors would receive if the court approves the compromise. See Table 1. And, just as the 18.67% dividend projected by Table 2 could increase, so could a 9.84% dividend if GE's claim is reduced by $258,000 due to its receipt of the Highway 88 property. A reduction of that magnitude would increase a 9.84% dividend to 13.5%.

Given the foregoing, the bankruptcy court is unable to discern a reasoned basis in the record supporting a conclusion that the compromise is fair and equitable.

In concluding that the compromise cannot be approved the court hastens to add that it disagrees with many of the issues raised by Mr. Malik. It does so now in order to provide guidance to the parties in the event they chose to ask the court to consider a renegotiated compromise.

Mr. Malik challenged the validity of GE's judicial lien on the Highway 88 property. He did so in order to argue that a significant portion of the consideration being offered by GE to the bankruptcy estate in the compromise, a 10% interest in any recovery of the Highway 88 property, is unlikely to ripen into a

recovery for the estate (or GE).  If true, Mr. Malik argued that,
by giving GE 90% of the Hunting Lodge notes, in which it has no
lien or security interest, the estate is making a very bad
bargain to the detriment of unsecured creditors.  While the court
agrees it is a bad bargain, he agrees for the reasons explained
above, not because it concludes that GE's judicial lien is
invalid.

GE obtained a judgment against the debtor and two other
defendants in Washington state court on July 22, 2005.  On August
19, 2005, GE applied for and obtained, in San Joaquin County, a
California sister-state court judgment for $1,175,103.84 against
the debtor only.  On September 7, 2005, GE filed an amended
application requesting the issuance of an amended California
sister-state court judgment.  The amended judgment added the
other two defendants.

The application for, and notice of entry of, the August 19
sister-state judgment were personally served on the debtor on
September 11, 2005.

The amended application for, and the notice of entry of the
September 7 amended judgment, were served on the debtor by mail
on September 26, 2005.  This mail service apparently was without
an acknowledgment of receipt.

GE recorded an abstract of judgment in San Joaquin County on
January 30, 2006.

At a hearing on February 8, 2006, the San Joaquin County
Superior Court granted GE's motion for assignment of the proceeds
from the sale of the debtor's Lathrop, California property.  The
debtor and Ms. Pishos were both present at that hearing.

-12-

1   Although the amended sister-state judgment was not served on

2   the debtor in accordance with Cal. Civ. Proc. Code § 1710.30(a),

3   California courts liberally construe the state's service of

4   process statutes, upholding service where the defendant has

5   received actual notice of the content in the notice.  See e.g.,

6   Pasadena Medi-Center Associates v. Superior Court, 9 Cal. 3d 773,

7   778-79 (1973).

8       Except for the addition of the two defendants to the

9   September 7 (amended) judgment, the August 19 and September 7

10  judgments are identical.  See Trustee's Exhibits G and I, filed

11  April 21, 2008.  The debtor, then, had actual notice of GE's

12  sister-state judgment as he was personally served with the August

13  19 judgment on September 11, 2005.  From the debtor's

14  perspective, that judgment was substantially identical to the

15  sister-state amended judgment.

16      Further, the debtor's appearance at the February 8, 2006

17  hearing on GE's assignment motion clearly indicates he was aware

18  of the sister-state amended judgment and GE's attempt to enforce

19  it against him.  There is no evidence that the debtor attempted

20  to challenge the entry of the sister-state judgment or amended

21  judgment on any ground, including insufficiency of service,

22  despite having the opportunity to do so at that hearing.  At the

23  hearing, the state court permitted GE to enforce its sister-state

24  amended judgment against the Lathrop property sale proceeds.

25      Hence, if a court with jurisdiction over the matter were

26  presented with the issue, it likely would reject Mr. Malik's

27  contention that the enforcement of GE's sister-state amended

28  judgment is void because of an insufficiency of service.  The

-13-

debtor obviously received that judgment, had an opportunity to raise any service problems, knew of, and participated in, a hearing to enforce the amended judgment, but did not raise the alleged service problems.

This court also rejects Mr. Malik's contention that the compromise is in reality a sale. The central dispute being compromised is the competing interests of GE and the estate in the Highway 88 property. As discussed above, under the compromise the trustee would prosecute all claims, including GE's rights based on its judicial lien, to recover the Highway 88 property. In exchange, GE would permit the trustee to pay administrative expenses and 10% of any recovery to general unsecured creditors. Further, the estate would give GE a portion of its rights in the Hunting Lodge notes and its rights against Ms. Pishos to recover note payments.

In <u>Goodwin v. Mickey Thompson Entm't Group, Inc. (In re Mickey Thompson Entm't Group, Inc.)</u>, 292 B.R. 415 (B.A.P. 9th Cir. 2003), the trustee sought to settle fraudulent transfer claims by permitting the transferees to pay $40,000. A creditor objected to the compromise and a third offered to purchase the claims for $45,000. The bankruptcy court rejected the overbid and approved the settlement. On appeal, the court concluded that the settlement was actually a sale of the estate's claims and therefore the bankruptcy court should have entertained overbids.

Here, however, the trustee is not selling a claim belonging to the estate. Rather, the settlement entails an agreement between two parties, the estate and GE, who have competing claims against third parties. As part of the compromise, neither party

-14-

is conveying to the other all their rights against those third parties. Instead, each is agreeing to share whatever recoveries they are entitled to receive against those third parties. Unlike Mickey Thompson, the estate is not releasing a claim or conveying a claim in its entirety to another.

The court further notes that despite Mr. Malik's contentions that the compromise is a disguised sale, neither he or anyone else has offered an overbid.

Before concluding, the court alos wishes to address two ambiguities in the record.

First, at one of the hearings on the motion, counsel for the trustee stated that the 10% carve-out under the compromise was for general unsecured creditors other than GE. The compromise agreement, however, provides that the 10% carve-out is "for the benefit of general unsecured creditors." This could be interpreted to allow application of the carve-out to GE's general unsecured claim. See Compromise at p. 6 ¶ E. If GE's unsecured claim would participate in the 10% carve-out, the compromise is even less beneficial to the estate and general unsecured creditors than the discussion above indicates.

Second, the compromise agreement is unclear as to whether the priority tax claim will be paid from any recovery before it is divided between GE and the estate. For purposes of discussion, the court assumed that the priority tax claim would be paid in full before payment of anything to GE. If this is not the case, this would be another reasons to not approve the compromise. Given that GE's claim in this case is now a nonpriority unsecured claim, a compromise that permitted GE to be

-15-

paid anything before the priority tax claim would be contrary to the distribution scheme mandated by 11 U.S.C. § 726(a).

A separate order will be entered denying the motion.

Dated: *2 May 2008*

By the Court

Michael S. McManus, Chief Judge
United States Bankruptcy Court

## CERTIFICATE OF MAILING

I, Susan C. Cox, in the performance of my duties as a judicial assistant to the Honorable Michael S. McManus, mailed by ordinary mail to each of the parties named below a true copy of the attached document.

Estela O. Pino
Pino & Associates
800 Howe Ave. #420
Sacramento, CA 95825

J. Russell Cunningham
Desmond, Nolan, Livaich & Cunningham
1830 15th Street
Sacramento, CA 95811

John M. O'Donnell
915 University Ave
Sacramento, CA 95825

Craig Miller
Davis Wright & Tremaine, LLP
1201 Third Ave, Suite 2200
Seattle, WA 98101

G. Michael Williams
1617 St. Marks Plaza #A
PO Box 7683
Stockton, CA 95267-6652

Wilshire Credit Corporation
PO Box 8517
Portland, OR 97207-8517

Office of the U.S. Trustee
Robert T Matsui United States Courthouse
501 I Street, Room 7-500
Sacramento, CA 95814

Dated: May 2, 2008

_Susan C. Cox_
Susan C. Cox
Judicial Assistant to Judge McManus